Okay, we're about to have two arguments on very closely related cases. I guess the lawyers are not – well, one lawyer is the same. And to the degree we can make them not as long as they are said to be because we're going to have two of them, or at least not make them repetitive, we would appreciate that. Go ahead. Thank you. Good morning, and may it please the Court. My name is Margaret Schmidt, and I represent the appellant Vern Elmer, who was the purchaser at an HOA foreclosure sale in 2012. Who was what? I'm sorry? He was the purchaser at an HOA foreclosure sale. For almost nothing, right? There was something. Okay. Like $4,000? It was a little over $4,000. Correct. I mean, just because it would help me understand this all. I mean, I gather that under the State statute there is simply no obligation to try and get anything like a market rate. As long as you pay off enough to pay off these – the Homeowners Association fees, that's it. There's no money left for anybody else down the line. Or there could be. There could be. I mean, it's publicly noticed, the sales are publicly held, and it's sold to the highest bidder. So, in theory, it could sell for a significant amount of money, which we've seen that occur. And then the leftover amounts are then dispersed in order of priority. But there's no minimum starting point for the bidding. There's no strike price. There sometimes is. It's not usually released until the time of the sale, what it is. And it's usually based on the amount of the HOA's lien, is what I've seen. Okay. Go ahead. Okay. And I'd just like to reserve two minutes for rebuttal as well. I didn't say that previously. This Court should reverse or amend the lower court's decision in entering summary judgment as a matter of law where significant questions of material fact remained that needed to be established before even considering the federal preemption question in this matter. In the lower court, discovery hadn't even commenced, and Freddie Mac and the FHFA moved for summary judgment based off of a claimed property interest that. Why is that of interest to your client? I mean, I can understand if there were competing parties saying that I'm the lender. No, I'm the lender. I'm the one that has the rights. But somebody lent the money, and there are no competing lenders here. I'm having trouble figuring out what the factual dispute really is. All of the recorded documents that are part of the public record that the Court took judicial notice of all purport that a different lender was the beneficiary under the deed of trust. And is somebody else showing up saying, no, I'm the lender? Correct. That would be Freddie Mac. Is anybody else? I mean, do we have a contest as to who the lender is here? Yes, there is. Who's the competing? Who's come into court and say, no, that's not Freddie Mac's. That's mine. Oh, well, so Freddie Mac is now coming forward and saying that they were actually the lender. Is nobody disputing that? Now Chase is not, even though all the recorded documents. So nobody's disputing that? We're disputing it. Yeah, but what difference does it make to you? Because, well, for one thing, because you claim that lien doesn't count anymore. But you're not in a position to say that I'm getting aggrieved by this. Somebody lent the money. I mean, you're not — I don't think you're contending the money wasn't lent by somebody. And if there's not a contest amongst prospective lenders, I'm not sure why anybody should care that your client, who's not one of those people contesting to have been the lender here, that your client hasn't been satisfied as to who the right party is. Who cares? The money was lent by somebody, and nobody other than Freddie Mac is saying, I'm the guy. The — I'll try to answer this succinctly. The reason why my client cares is because he purchased the property without knowing that — Well, I mean, this is — this kind of issue arises — we had four regular foreclosure cases yesterday. But I guess the difference here is that the reason your client cares is that if whoever it is, is not the Federal Government, then there's no — then they probably can't come in now. Correct. Because — If it's a private lender. Right. And — Is that right? Correct. They can't make a claim under HERA if the FHFA doesn't own the property. Their lien would have been extinguished. Exactly. That's how NRS 116 has been applied in Nevada, that it extinguishes the first seat of trust. So Vernell — Unlike most of these cases where it really doesn't matter, in this instance, the identity does matter. Exactly. To your client. Yes, exactly. Because whereas they thought when they purchased the property that Chase was the lender and that there would be no Federal preemption that could be raised, now, all of a sudden, Freddie Mac comes forward and says, no, I actually did own the loan at the time of the HLRA foreclosure sale. And under this property protection clause, you now purchase subject to the deed of trust, whereas otherwise the deed of trust would have been extinguished under Nevada law. But even if — you're saying that there was no discovery. No discovery. But there also was no — it didn't prevent an affirmative challenge to the documents in the record establishing Freddie Mac's property interest, right? Unlike Kielty. So there's the declaration, there are the printouts. Correct. Nothing really to controvert. The recorded documents that are in the public record, those are conflicting evidence. The district court took judicial notice of those records, and they show a chain of ownership that Freddie has never identified in any of those documents or any of those records. Other district courts to have considered this issue in the lower courts have held that these computer printouts, that these self-serving affidavits are insufficient to rebut the presumption that's implied by these recorded documents that are saying nobody else had an interest, that the lenders were the beneficiaries under the deed of trust. The district courts haven't uniformly so held, have they? It's not. It's not uniform. And it depends on the record related to the — Correct. Correct. And sometimes in those cases, Freddie Mac would have been assigned the deed of trust previous to the HOA foreclosure sale. So that puts it in a different situation, because then there is public record that Freddie Mac had an interest in the property. Does the deed of trust need to be recorded under Nevada law? I thought it doesn't need to be recorded under Nevada law, necessarily. The assignment? No. Yes, the assignment of the deed of trust. Does it need to be recorded? It doesn't need to be recorded. Yes, it does need to be recorded in order to enforce the security interest against the property. The way that Nevada law, which would apply in this case, functions is that the note holder, that's a separate instrument than the deed of trust, and they're transferred in different ways. A deed of trust needs to be transferred in writing, and in order to be enforceable, it needs to be recorded. A note, in order to transfer that, that needs to be actually transferred to and held by the entity that's claiming that they own the note. But in this situation, Freddie Mac came forward with a self-serving affidavit after there was a hearing on the matter. The district court questioned whether or not that affidavit was sufficient. So the short version is that you're, I mean, insofar as there's any injury here, it's that if your client had looked at the time they bought the property, they would have seen that the deed of trust was owned by Chase, is that right? Correct. And therefore, what? Sorry. At the time of the HOA foreclosure sale, it hadn't been assigned yet to Chase. It's still, there hadn't been any assignment past the original deed of trust. Or is this the mortgage company or something? It was Mortgage, Inc., something like that. And then MERS was designated as the nominee for the beneficiary under the deed of trust. So if they had looked at the recorded deed of trust, what would they have seen? That MERS was the nominee for the beneficiary of the deed of trust, and that Mortgage, Inc. was the lender. Okay. But if MERS is the nominee, then MERS, we know, remains the nominee ordinarily, even if there are assignments down the line, right? Sorry. My understanding is that MERS, the point of having MERS is to have them remain the recorded beneficiary of the deed of trust if there are changes in the ownership along the way. Right. That's correct. And then they. So essentially, the recording didn't tell them anything. It didn't tell them who actually. And insofar as what's relevant here, was it a public or a private entity, it didn't tell them that. I mean, it would have said that the original lender would have presumably still been the holder of the note. Why? Because MERS, the whole point of MERS having the deed of trust, as I understand it, is that there can be assignments of the loan and MERS still remains the recorded beneficiary on the loan, on the deed of trust. Right. But it doesn't say that MERS also holds the note. It didn't specify who held the note. Right. At that time. So the recording isn't the point then? The recorded deed of trust. That's not what you're complaining about. As long as MERS, in other words, whoever owned the loan, MERS would have been sitting there as the recorded beneficiary of the deed of trust. It would have technically until they assigned it, but no other lender or, you know, bank could have enforced or claimed an interest in the deed of trust until that assignment was recorded. I think you may be making the same point, which is that at the time of the foreclosure sale, when your client acquired his interest in the property, there was nothing other than the identification of MERS, who is commonly understood to be a front, a nominee. It wasn't known that it was Freddie Mac, a government entity, that was standing behind as the real party. Correct. There was no indication that Freddie Mac had any interest in the loan, in the deed of trust, in the note. There was a substitution of trustee, and I believe, and then there was a notice of default that was recorded prior to the HOA foreclosure sale, and neither of those records identified who. But that's a separate question from the one that you began with, which is whether Freddie Mac, in fact, had an ownership interest at any relevant point in time. Right? Well, I'm just saying that those recorded documents didn't elaborate on who the beneficiary was. It said whoever was recording was acting on behalf of the beneficiary, but didn't specify who the beneficiary was. So even in those recorded documents, it wasn't disclosed that Freddie Mac allegedly purchased the loan when the appellees say that they purchased the loan. So, I mean, that raised a significant question of fact that went unresolved. We asked for 56 percent. So, Kathy, you don't really want to argue about the preemption question, because you haven't yet. Oh, preemption. I can. I'm running out of time right here, but I can answer any questions that you may have. Well, here's my question about HERA. Okay. Given the volume of foreclosures, Congress passed a law that provides this consent provision against the backdrop of a huge volume of foreclosures. So even if it was also contemplated that the conservator would take some affirmative action, that consent provision was there. And so if there's a problem created by that, if we were to find preemption, isn't that a problem for Congress to fix? It's not one this Court can fix? Right. I mean, it is Congress that needs to define whether or not they want State law to be preempted. And the way that the statute is phrased right now, there is no preemption because it leaves room. Well, but there's no way to – well, here's my question, and this may be just that I don't understand the language used in this world. What exactly about the statute uses the term foreclosure, lien, et cetera. What does – would one say in real estate language that the – assuming that this was a Freddie Mac security interest, that it was foreclosed? Was that property interest foreclosed on? If they owned the deed of trust. Oh, yes. But my understanding is that the property that was foreclosed on was the house. Correct. The consequence of foreclosing on it was that the – because there wasn't more money that came in, was that the – that Freddie Mac could not – security interest wasn't worth anything. And what I'm asking is, does the statutory language – everybody seems to think it does, and it's probably so, but I'm just wondering whether the language exactly applies. That's a great question. Our position on this, and it's not really fully briefed in our briefing, is that it is a lien interest that they're claiming in the property. It's a lien. It's not a new lien. Right. And so it is the – like, it's the property that is being protected under that statute. It doesn't say a lien interest. It says a property that would be extinguished and would be protected under that statute. So arguably, it wouldn't – this type of situation wouldn't fall under that statute. Would the statute make any sense if it didn't? Because there are situations where Freddie and Fannie may actually own the property, where they may have credit bid on the property and acquired it back into their own possession, and then they would actually have real property that should be protected under that protection clause. Okay. Thank you. Okay. Your time is up. I won't give you some time for a brief. Thank you, Your Honors. May it please the Court, Michael Johnson for the appellees, Federal Housing Finance Agency, and others. Let me start with the question Judge Berzon asked at the end. How do we read the statute? Is a lien really being subjected to foreclosure for purposes of the statute? You're not saying that it's subject to levy attachment or garnishment or sale, are you? Correct. So it's foreclosure. It's subject to foreclosure. And we have the language of the statute, the purpose of the statute, and judicial interpretation of a substantially identical statute that applies to the FDIC all suggest that subject to foreclosure means subject to extinguishment by another foreclosure. This happens most frequently in the tax lien circumstance where a municipal or state taxing authority slaps liens on a property because the property owner has stopped paying taxes, tries to foreclose on those liens in a way that would wipe out. So essentially the answer to my question is, yes, I'm right that they're not actually foreclosing on the lien, but that the language of the statute is broad enough to reach a situation where by virtue of foreclosing on something else, they're extinguishing the lien. That's essentially what you're saying. Correct. That subject to foreclosure means subject to the effects of a foreclosure of some other lien. And that's the only thing it could possibly mean if the statute is going to achieve its purposes, which is to protect the property of Fannie Mae and Freddie Mac while in concern. Sotomayor, there is the possibility, as was said before, that you're talking about that the concern here was actually not with the liens, but with the situation where the agency actually owns the real property. With great respect, I don't think that's a reasonable interpretation because of the way the enterprises, which is sort of a term of art for Fannie Mae and Freddie Mac, the nature of their business is to own mortgages, own security interests. And then to take to foreclose and take the property if, in fact, they're not paid. Well, necessary, but that's a small part of their business. The bulk of their assets, the things that are important to the secondary mortgage market, the things that Congress meant to protect with this property protection provision are the lien interests. That's undoubtedly 90-plus percent of their balance sheet. And there's no reasonable explanation for why Congress would want to protect the mouse, but leave the elephant unprotected. Well, I mean, the interesting thing here is my understanding is that at least for a while, the agency seemed to think, hadn't quite lit on this possibility and was sending these guidelines and so on saying to pay these HOA requirements so we don't get foreclosed on, we don't lose our lien. No, no, Your Honor. That's an argument that the other side makes quite frequently, and it's just not correct. The agency isn't propounding any of those things. The guide is a document that Freddie Mac prepares, and it's conservatorship neutral. Remember, this statute only applies during the time that Freddie Mac is in FHFA's conservatorship. Freddie Mac's management needs to conduct its business in a way that will be durable when the conservatorship ends, as it will. Conservatorship is an inherently temporary status. It will end. And so should the conservatorship end tomorrow or next week or next month, the guide needs to apply. And if the backstop of the property protection provision isn't there, then yes, Freddie Mac does want its servicers to be bound to take care of the liens. But while we're in conservatorship, the fact that Freddie Mac has issued a guide that says, hey, when it's necessary to protect our lien, servicers, you better pay, that doesn't change anything about the application of a statute that applies only until the time the conservatorship should end. Is HERA meant to insulate Freddie Mac from all possible loss? Not business losses. It's meant to protect Freddie Mac's property from any extinguishment by foreclosure or the other state law devices that are mentioned, the garnishment, attachment, all the laundry list of bad things that could happen under state law. That's a need for any affirmative action. The statute is the protection, the blanket protection. Correct. The statute provides blanket protection because Congress made a determination. You know, Congress has the prerogative to allocate the benefits and burdens of economic life, and it did that here. It looked at a situation where it was at least foreseeable in 2008 when HERA was enacted that Fannie Mae and Freddie Mac would become troubled. And Congress recognized that because Fannie Mae and Freddie Mac are such significant players in the secondary mortgage market, and because the market for housing finance is so critical to the nation's economy, that Fannie Mae and Freddie Mac's property needed to be protected. Now, when it comes to the real problem here, and it goes to the facts of this case, is it's hard to feel very sorry for the owners here who paid nothing for these houses. But nonetheless, the question is, how were they supposed to realize that they were buying, thinking they were buying the house, but, and that the other liens were going away as they ordinarily would, but without any, I gather, easily available documentation to know that Freddie Mac was standing there with a ability to simply get rid of it all? Yes, Your Honor. Years later. Pardon me? Years later. Years later, years into the conservatorship, in some cases. Congress. But years into the ownership of the house as well. I mean, I don't know what happened to the houses in the meanwhile, but for all I know, there were, you know, children born and grew up there. I mean, there were. Well, sure, but that's why we have statutes of limitation. I mean, there's no suggestion that anybody sat on their hands and waived the claim. I mean, the quiet title action is timely, and Freddie Mac, you know, the conservator has, and Freddie Mac, have plenty of things on their mind that keep them extraordinarily busy. So getting around to. But what I'm asking really is, given this, is there some need for a particular meticulousness with regard to notice to the, that Freddie Mac is actually standing here at the time you're trying to buy the house, and is there any way they could have known that? So someone might think Congress could have enacted a provision that would require that. But what Congress did was say, if Freddie Mac has a property interest while in conservatorship, it is protected. Now. With that regard to whether anybody could have figured that out. As long as it's, you know, the, for purposes of this case, we're analyzing it as Nevada law would apply. And Nevada permits the owner of a deed of trust, Freddie Mac here, to record in the name of a servicer or nominee. That's, Judge Clifton used another term for it. But the, MERS was the recorded beneficiary of the deed of trust in this case at the time of the HOA sale. And I think a reasonable person would know that MERS is standing in for someone else. It appears in the text of the deed of trust that it's acting on behalf or as nominee for the lender. So if you're an extra careful purchaser, what would you have done to find out whether this, because now it becomes, turns out to be super important whether that someone else is Freddie Mac or a private lender. How would you find that out? Oh, what this purchaser did was nothing. So what someone could have done is a very diligent purchaser. What would you do? A diligent purchaser might have contacted MERS. A diligent purchaser might have pursued who was in the deed of trust. A diligent purchaser. Oh, it's the second one. I'm sorry. I'm sorry. I heard the MERS part. What's the second one? Who, if it weren't a MERS instrument, whoever shows up as the beneficiary of the deed of trust. Now, we don't know because they never asked what would happen if they had gone to MERS. We don't know what would have happened because they never asked if they had gone to FHFA. But the statute doesn't require that there be notice. And Nevada law doesn't require that the owner of the deed of trust appear anywhere on the face of the deed of trust. That's the Monteerth case. And so when the plaintiff says that. Well, the argument that's made about that is that that's true with regard to the borrower, but that with regard to third parties, there is some requirement. Is that true or not? That's their argument. It's a creative one. I think it's not correct because Monteerth acknowledges that the owner of the deed of trust remains a secured creditor, cites a case that says fully secured creditor. And I think what that means is able to foreclose and recover the interests in the property. Now, if the security interest is no good against anyone but the borrower, then that secured creditor is going to have great difficulty foreclosing. And I would have expected, at a minimum, the Nevada Supreme Court to tell us, what would it mean for, in that case, Deutsche Bank, because MERS was the record beneficiary, what would it mean for Deutsche Bank to actually do what we're saying it can do, act like a fully secured creditor and foreclose. But the net result of what you're saying is that Monteerth doesn't decide the question. I'm sorry? The net result of what you're saying is that Monteerth doesn't address the question. It wasn't before it and it doesn't decide it, i.e., what's true with regard to third parties. Well, Monteerth adopts the restatement. And the restatement speaks very clearly that when there is a servicer or, I think it the fair interpretation is a nominee or. But it also says things like an unrecorded deed is vowed immediately between the mortgager and the mortgagee. Thus, the security interest attaches to the property as between the mortgager and mortgagee upon execution and as against third parties upon recordation. Yes. And this interest was recorded. It was recorded in a way that complied fully with Nevada law and that the restatement, which Monteerth says, we adopt. We adopt all the parts that we didn't discuss in the Edelstein case. We adopt them here expressly because they weren't relevant there. And what the restatement says is, of course, we're going to recognize when an investor records in the name of a servicer because if we don't recognize the validity of that, the investor's expectation of security will be frustrated. And that, the only thing that can mean, really the only thing it can mean is that the interest is good against the world if you comply with this restatement principle that you record in the name of an entity that can act as your nominee and has authority to foreclose on your behalf. And we know that's present in this case because the deed of trust says it. It says it. Is there any, has anybody, I mean, I gather many of these cases kicking around in Nevada. I gather there are many of these cases kicking around in Nevada. Oh, yes. Yes, yes. Has anybody asked the Nevada Supreme Court how, I mean, it does strike, how it would treat this particular situation where the, I mean, unlike, as Judge Clifton was saying, in most situations somebody owns the loan and who cares who it is, but in this situation it really matters who it is. It does matter, and that's, as I say, Congress's prerogative to. Well, I know, so I'm wondering whether the Nevada Supreme Court, which hasn't exactly decided this situation, maybe should be asked. So there are HERA cases percolating their way up to the Nevada Supreme Court. None has yet been argued. I think that this Court. Is there any on which the Nevada Supreme Court has granted hearing, do you know? There is. So there are cases in which HERA is at issue, but the Nevada Supreme Court is not yet ready to confront it because it's a standing issue. It strikes me as not, you know, you're running the mill foreclosure problem with regard to the need for documentation when the documentation here, the importance of it is quite different than usual. It's not just a technical problem. It, so you're speaking in terms of notice to the potential purchaser, and the, of course, the purchaser can only acquire the interest that's available for sale, right? If the HOA can't convey good title, the purchaser can't acquire it. And if we're talking about notice, we're sort of getting into an argument that Elmer doesn't make, but Berezovsky does, and that's whether there's some sort of due process implication. This Court looked at that in a case called Fields, which the district court relied on in the Skylights case that is the, that the Elmer and Berezovsky decisions incorporate. What case? The Ninth Circuit case is called Fields. It's a case about the Oregon statutes of repose and limitations for wrongful death action. A person whose claim was extinguished by application of those statutes said, hey, wait a minute, my property interest in the claim has been extinguished. And therefore, there's due process problem here. They argued substantive and procedural. The court, this court said, we're going to assume that you had a property interest in the claim and you don't have a due process issue because the legislature has the prerogative to allocate the benefits and burdens of economic life. We're only going to look at that statute on arbitrary and irrational standard. And there is a reason why Oregon enacted a statute of repose for wrongful death. It was concerned about medical malpractice claims. There was a reason here why Congress enacted a property protection provision. It wanted to preserve the national economy, the secondary mortgage market, and Fannie Mae and Freddie Mac's financial stability. Those are very important valid reasons. And that's enough. The operation of the statute is what circumscribed the property interest that the HOA could convey here. So, yes, we can act on the assumption that here are created winners and losers. We can accept that as a premise, and we can still say that's Congress's prerogative because when Congress allocates the benefits of the program. I was really asking a different question, and it wasn't so much a due process question, although it's a due process backup to it, and that is would Nevada actually treat this situation, this particular third-party situation, such that there is no either a recording requirement or any other kind of notice requirement that would allow with a lot of digging, which you're not so sure would have turned up anything, that they weren't really buying anything? I mean, that's what we have here. They weren't buying anything. Monteerth is unequivocal. It adopts the restatement, and the restatement is very clear that when an instrument is recorded in the name of a servicer or a nominee, it is the investor and not the servicer that owns the security interest. That's in, I believe it's comment C to restatement section 5.4. And I would urge the court to study that restatement carefully and to study Monteerth carefully to see how thoroughly and unequivocally it adopts the restatement analysis. I see my time is up. Okay, thank you very much. You're very helpful. Yes, please. Thank you. I'll make this brief. Monteerth does not adopt the restatement completely. It only specifically cites to two sections of the restatement, two exemptions that are in there in the limited context of a borrower's bankruptcy. And when they're determining who had the right to record a proof of claim in that bankruptcy, it does state that as to third parties, it is not enforceable until recorded. But even if, hypothetically speaking, that Nevada did adopt the restatement, under the restatement, I believe it's subsection B, it states that we strongly recommend that assignments be recorded because if it's sold to a bona fide purchaser, it's not enforceable against that purchaser. Which that's, those are the facts of this case right here. As to a third party who had no notice, who the actual beneficiary was, there needed to be that recorded interest in order to enforce it against my client. Any other questions? Thank you. Thank you very much. Thank both of you for your useful argument in this complicated case. Elmer v. J.P. Morgan Chase Bank is submitted. And we will go to the last case of the day and of the week, Berezovsky v. Bank of America.
judges: Berzon, Clifton, Mueller